[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought by the plaintiff husband against the defendant wife for dissolution of their marriage on the grounds of irretrievable breakdown. The parties were married on August 26, 1990 in Hackensack, NJ. The parties have one minor child issue of the marriage: David Martin Epstein, age 10, born May 6, 1991.
The parties appeared at trial and each testified. The court observed their demeanor and evaluated their credibility. In addition, the court reviewed and considered the exhibits, sworn financial affidavits, claims for relief proposed orders, tax calculations, and trial memoranda. Based upon all of the evidence, the court makes the following findings. CT Page 15941-kj
This action was commenced on November 24, 2000. The court has jurisdiction, and all statutory stays have expired. The marriage has irretrievably broken down and judgment may enter dissolving the marriage on this ground.
The plaintiff is 45 years old and in good health. He received a Bachelor of Arts degree from Boston University in 1978. During the marriage, Mr. Epstein was in the business of manufacturing and selling lace. With two others, in 1995, he formed Tex Craft Industries, Inc. In 1998, when the relationship between principals became strained because of his misuse of his expense account, the plaintiff purchased his partners' interests for $30,000. Later, the company was purchased by Carolace Embroidery Company, Inc., the plaintiff's current employer.
In September of 2000, the plaintiff entered a Masters program in Computer Science. He has completed 12 of 36 required credits and will likely finish this program within two years. The plaintiff took a student loan to pay for his courses and no payments are required until six months after program completion.
The defendant received a Bachelor of Science in marketing from Marymount College in 1975. Shortly after the marriage in 1990, the defendant became pregnant with twins, one of whom died in utero. From 1990 to 1993, and intermittently thereafter, the defendant owned and operated a business that designed, painted and sold furniture and accessories to specialty stores. In addition, the defendant was the homemaker and primarily responsible for care of the parties' child, David. In 1998, at plaintiff's request, and in an effort to help with the family's deteriorating financial circumstances, the defendant began a new business that designed, manufactured and sold bed linens and other related issues. After three years of start up work, from 1998 through 2000, this venture has reached the point of profitability, with expected profit for 2001 of approximately $8,400.00.
The plaintiff's income from wages, salaries and other sources between 1995 and 2000 ranged from $117,600.00 to $162,500.00, with an annual average of approximately $140,500.00.
The minor child, David, is now 10 years old, and has a close relationship with his mother and virtually no relationship with the plaintiff father. This results, at least in part, from the plaintiff's episodes of explosive and outrageous behavior towards the child and the defendant mother. Prior to the parties' separation in May of 2001, the CT Page 15941-kk plaintiff was verbally, emotionally and physically abusive to both.
At the time of the parties marriage, the defendant had inherited $207,726.00, from the death of a friend, which was distributed to her in 1990 and 1991. The plaintiff came to the marriage with only liabilities, including an outstanding balance on his credit line of some $24,600.00. The defendant, in 1993, spent some $78,000 from her inheritance to purchase the real property at 26 Silverbrook Road, Westport, Connecticut, the property which the parties have used for their home to the present time. During the marriage, the defendant used approximately $41,000.00 of her inheritance to make improvements to the property, and additional sums to subsidize family living expenses. As a result, as of 1995, there was less than $5,000.00 remaining from her initial inheritance. In 2000, the defendant inherited from her mother an additional of $50,000.00. These funds were used for home improvements and for living expenses. At the time of trial, only $12,642.00 remained in the defendant's money market accounts and stock funds from the two inheritances. The defendant also contributed, through her own effort and work, to the home maintenance and improvements, including painting, gardening, landscaping, decorating, sewing window treatments and bed clothes, and care of the family.
While the defendant was contributing her earnings, her inheritances, and her effort toward the family's needs and toward the acquisition and improvement of the family's assets, the plaintiff was regularly and selfishly, engaging in a consistent course of extravagant spending on himself for entertainment, dining and for clothing purchases at one of Fairfield County's most prestigious and expensive men's stores.
Throughout the years, and in large part to pay off credit card balances resulting from the plaintiff's spending habits, the parties, at the frequent suggestion and/or insistence of the plaintiff, refinanced their property at 26 Silverbrook Road. As a result of these refinances and home equity credit lines, the parties withdrew significant amounts from the equity on their home. In 1998, as part of a reconciliation effort, the defendant agreed to and cooperated with the plaintiff in a home equity loan in the amount of $83,300.00. The plaintiff, agreed to use these funds to pay off existing liabilities. However, the plaintiff failed to pay off an outstanding balance on the defendant's VISA credit card and the balance on a joint Citi Bank Checking Plus line of credit, although paying off most of his accounts.
The plaintiff's dissipation of family assets and egocentric behavior, together with his verbal, emotional, and physical abuse towards the defendant and their minor child were the primary causes for the breakdown CT Page 15941-kl of this marriage.
At the time of trial, the 26 Silverbrook Road property was listed for sale, with an asking price of $659,000.00. The property is subject to a first mortgage of approximately $318,000.00 and a home equity loan, with an approximate balance of $80,000.00. The first mortgage is 60 days in arrears and foreclosure appears imminent. Because of the plaintiff's lapses, late charges and interest are due on the first mortgage of approximately $2600.00, and the home equity line is three months in arrears, with late charges due of approximately $800.00. The plaintiff has, since 1998 and thereafter, consulted with bankruptcy counsel and has been and is presently considering filing an individual petition.
The plaintiff claimed that his base salary was reduced in April 2001 from $120,000.00 to $110,000.00. His testimony was not credible in light of financial statements he submitted as part of refinancing and financial aid applications. The plaintiff's earnings for the current calendar year should be, and his present earning capacity is, at least $127,000.00.
The court has entered final orders for joint legal custody of the minor child, David Martin Epstein, with sole physical custody to the defendant and visitation orders, all in accordance with the "Agreement Re: Custody and Visitation of Minor Child" dated October 29, 2001, on file and executed by both parties, and their counsel.
 ORDERS
The court has carefully considered the statutory criteria and the applicable case law in reaching the decision reflected in the orders that follow:
1. Dissolution — the marriage of the parties, having broken down irretrievably, is hereby dissolved.
2. Custody — custody and visitation, as previously stated, and ordered, shall be in accordance with the agreement of the parties dated October 29, 2001.
3. Alimony and Support
a. Commencing upon the date of this decision and until the death of the husband, the death of the wife, the wife's remarriage, October 31, 2010, or in the event of a modification order of the court pursuant to the provisions of Section 46b-86 (b), whichever event shall first occur, CT Page 15941-km the husband shall pay, as unallocated alimony and support, the sum of $4,700.00 per month from the date of this decision through October 31, 2010.
The presumptive support obligatory figures would require payment by the husband of $321.00 per week. The unallocated alimony and support award deviates from said amount, however being unallocated the presumptive guideline amount would not be applicable. The increase would qualify for a deviation, in any event, as part of a coordination of total family support.
b. That commencing on the date of termination of the husband's obligation to pay unallocated alimony and support, as provided in asupra, to the wife and until the death of the husband, the death of the minor child or the minor child's attainment of the age of eighteen (18) years, if the child is graduated from high school, or if the minor child has attained the age of eighteen (18) years while still in high school, then until the minor child attains the age of nineteen (19) years or sooner graduates from high school, whichever event shall first occur, the husband shall pay to the wife as child support for the support of the minor child an amount to be determined by the State of Connecticut Child Support Guidelines then in effect.
c. That commencing in 2001 and until alimony and child support obligations to the wife has ceased, whichever event has last occurred, the husband and wife shall annually exchange copies of their respective form W-2(s), form 1099(s) and form K-1(s) within 30 days of receipt and with copies of their federal income tax returns and all attached schedules for the preceding year within 30 days of filing.
d. An immediate wage withholding order is entered against the earning of the husband pursuant to Section 52-362 (b) of the Connecticut General Statutes.
4. Household Expenses
a. Commencing on the date of this Memorandum, and until the date of closing from the sale of the real property located at 26 Silverbrook Road, Westport, Connecticut, the plaintiff husband shall be responsible for, pay, indemnify and hold the wife harmless from premiums for the existing homeowners insurance, umbrella liability insurance, and wife's automobile insurance.
b. Until the date of closing from the sale of the real property CT Page 15941-kn located at 26 Silverbrook Road, Westport, Connecticut, each party shall be responsible for, pay, indemnify and hold the other harmless from (50%) of the monthly home equity principal and interest payments incurred incident to that real property.
5. Medical, Dental and Hospitalization Insurance
a. The plaintiff husband shall maintain for the benefit of the child all medical, hospitalization and dental insurance coverage currently in effect until the child attains the age of eighteen (18) years, if the child has graduated from high school, or if the minor child has attained the age of eighteen (18) years while still in high school, then until the minor child attains the age of nineteen (19) years or sooner graduates from high school, or whichever event shall first occur. In the event the plaintiff husband shall not be provided by his provided by his present or any future employer with medical, hospitalization and/or dental insurance coverage for the child, the parties shall maintain said insurance at their expense, in accordance with the percentages provided by the Child Support Guidelines.
b. The husband shall be responsible for and shall pay 80% of un-reimbursed medical expenses and the defendant wife 20% of said expenses in accordance with the guideline calculations,[1] until the child attains the age of eighteen (18) years, if the child is graduated from high school, or if the minor child has attained the age of eighteen (18) years while still in high school, then until the minor child attains the age of nineteen (19) years or sooner graduates from high school, whichever shall first occur.
c. The plaintiff husband shall cooperate and assist the wife to enable her to attain continuation of coverage of the existing Cigna Health Care Insurance Plan. He shall forthwith provide her with any forms necessary to permit her to elect that coverage and the wife shall be responsible and pay for that coverage.
6. Life and Disability Insurance
a. The plaintiff shall immediately but in no event later than December 1, 2001, dissolve his life insurance trust so as to secure the future support of both the defendant and the minor child by procuring life insurance on his life with a benefit in the event of his death of $375,000.00 with the defendant as beneficiary for so long as he has an obligation to pay alimony and/or child support to the defendant or whichever shall last occur, and in addition, to secure a life insurance CT Page 15941-ko policy on his life with the minor child, David Epstein, as beneficiary and the defendant wife as trustee having a benefit in the event of his death of $375,000.00 until said child attains the age of eighteen (18) years, if the child is graduated from high school, or if the minor child has attained the age of eighteen (18) years while still in high school then, until the minor child attains the age of nineteen (19) years or sooner graduates from high school whichever shall first occur.
b. The plaintiff shall not encumber these policies if the encumbrance or encumbrances would in any way lessen and/or jeopardize the face value of the life insurance policy and the net benefit to the defendant and the child. The plaintiff shall maintain the life insurance policies and pay the premiums when due. The plaintiff shall instruct the appropriate insurance company and/or companies to automatically send to the wife premium default notices and notices of change of beneficiaries, if either of the same should occur. The plaintiff shall submit proof to the defendant that said life insurance coverage is in full force and effect within 30 days of the date of this Memorandum and thereafter on or before January 1 of each year.
c. In addition, for so long as the plaintiff has an obligation to pay either alimony and/or child support to the defendant, the plaintiff shall maintain his current disability insurance policy in effect.
7. 26 Silverbrook Road, Westport, Connecticut Provisions
a. On the date of this Memorandum of Decision, the court shall judicially convey all of the plaintiff's right, title and interest in the real property located at 26 Silverbrook Road, Westport, Connecticut, to the wife.
b. Commencing on the date of this Memorandum of Decision and until the date of closing of the sale of the real property located at 26 Silverbrook Road, Westport, Connecticut, the defendant shall be responsible for, pay, indemnify and hold harmless the plaintiff from the monthly first mortgage and interest payment(s), electric expense(s), cable expense(s), local and long distance telephone expense(s), garbage collection expense(s) and gas expense(s).
The real property located at 26 Silverbrook Road, Westport, Connecticut, currently listed for sale, shall be sold at soon as practicable. The parties shall attempt to agree upon the listing broker, listing price, reductions in listing price, and sales price. In the event they fail to agree, the issues shall be referred to the Superior Court CT Page 15941-kp for the Judicial District of Fairfield at Bridgeport for final resolution and the court retains jurisdiction for said purpose.
From the gross proceeds of sale, the following expenses shall be paid:
a. The then remaining balance of the first mortgage;
b. The then remaining balance of the home equity loan;
c. Brokers Commission;
d. Customary attorneys' fees
e. State and local conveyance taxes;
f. And customary closing adjustments.
The net proceeds shall then be paid eleven and fifty-four hundredths (11.54%) percent to and for the husband's tax obligations for the years 1998 through 2000 and eighty-eight and forty-six hundredths (88.46%) percent to the wife.
7. Other Assets and Liabilities
Except as otherwise provided for herein, the defendant shall retain all other assets reflected on her financial affidavit dated October 10, 2001, free from any claim of the plaintiff. Except as otherwise provided for herein, the plaintiff shall retain all other assets reflected on his financial affidavit dated October 10, 2001, free from any claim of the defendant. Except as otherwise provided herein, the defendant shall be responsible for, pay, indemnify and hold the husband harmless from all other liabilities reflected on her financial affidavit dated October 10, 2001. Except as otherwise provided herein, the husband shall be responsible for, pay, indemnify and hold the wife harmless from all other liabilities reflected on his financial affidavit dated October 10, 2001.
8. Household Contents
The parties shall attempt to agree upon division of all household furnishings and other personal property located at 26 Silverbrook Road, Westport, Connecticut. In the event the parties fail to agree on that issue, the issue shall be referred to the Court Services Support Division for mediation and to the Superior Court at Bridgeport for final resolution. CT Page 15941-kq
9. Income Taxes
a. On the date of closing of the sale of the real property at 26 Silverbrook Road, Westport, Connecticut, the parties in accordance with their agreement and request for orders, shall execute and file joint federal and state amended income tax returns for the years 1998 through 2000. Eleven and fifty-four hundredths (11.54%) percent of the net proceeds from the sale of that real property shall be applied to all taxes, penalties and/or interest owed. If there are insufficient funds to pay any portion of the taxes, penalties and/or interest owed, the plaintiff shall immediately provide to counsel for the defendant, Attorney Pasquini, certified checks in the amount of all deficiencies made out to the appropriate tax authorities. The plaintiff shall be responsible for, pay, indemnify and hold the defendant harmless from any deficiency owed for taxes, penalties and/or interest owed at the time of the filing of these amended income tax returns as well as for any taxes, penalties and/or interest occasioned in the future. The defendant's attorney, Attorney Pasquini, shall hold the 1998 through 2000 amended income tax returns and the eleven and fifty-four hundredths (11.54%) percent of the net proceeds in escrow until the plaintiff tenders the said funds for any deficiency to her. The amended income tax returns shall only be filed with the appropriate taxing authorities with said checks sufficient to pay all taxes, interest and/or penalties owed. Contemporaneously with the husband's signing of said amended joint tax returns, the husband shall deliver to the defendant a written and signed statement and representing that the defendant has no knowledge as to the accuracy of the information contained in all federal and state income tax returns that are jointly filed and/or to be filed as pertains to the plaintiff husband's business income, personal income, business deductions and personal deductions and that she is relying upon information exclusively provided by the plaintiff husband and that the husband acknowledges that the wife is an innocent spouse. The husband shall never claim that the wife's signing or having signed those returns is an admission of the accuracy of such information contained in those returns.
b. The husband shall indemnify and save the wife harmless from any liabilities for taxes, assessments, penalties, or interest which may result from any joint federal, state or local income tax returns as pertains to the husband's business/personal income or business/personal deductions and the husband shall pay for the defense of any such claims.
c. The wife shall indemnify and save the husband harmless from any liabilities for taxes, assessments, penalties, or interest which may CT Page 15941-kr result from any joint federal, state or local income tax returns as pertains to the wife's business/personal income or business/personal deductions and the wife shall pay for the defense of any such claims.
d. For the period of January 1, 2000 until July 31, 2001, the husband shall be entitled to claim as deductions on his federal, state and local income tax returns, any payments that he made during that period for mortgage interest, home equity loan interest and real estate taxes incident to the property located at 26 Silverbrook Road, Westport, Connecticut.
e. Commencing August 1, 2001 and until the date of closing from the sale of the real property located at 26 Silverbrook Road, Westport, Connecticut, each party shall be entitled to take fifty (50%) percent of the home equity loan interest incident to that real property on his or her respective federal, state and local income tax returns.
f. Commencing August 1, 2001 until the date of closing from the sale of the real property located at 26 Silverbrook Road, Westport, Connecticut, the wife shall be entitled to claim one hundred (100%) percent of the first mortgage interest deduction incident to that real property on her federal, state and local income tax returns.
10. Counsel Fees
Each party shall be responsible to pay his or her respective counsel fees.
11. Husband's Obligations Not Discharged in Bankruptcy
Payments/distributions to/due the wife and/or minor child under these proposed orders from the husband are expressly found to be in the nature of maintenance and support for the wife and the minor child under the applicable bankruptcy law and shall be not be discharged by the husband in any bankruptcy proceeding filed by or against the husband. Furthermore, it is expressly held that the other financial orders for the wife and/or minor child under this decree would be undermined if the subject payments/distributions to the wife and/or minor child could be discharged by the husband in any bankruptcy proceeding.
Judgment will enter in accordance with these orders.
HILLER, J. CT Page 15941-ks